IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

PETER LE *et al.*,

Defendants.

No. 1:19-cr-57 (LO)

**RESPONSE OF THE UNITED STATES
TO DEFENDANTS' MOTION TO DISMISS INDICTMENT**

The United States hereby responds in opposition to the defendants' motion to dismiss,

filed February 25, 2022, and scheduled for a hearing on March 8, 2022.

**I.    Background**

The defendants, apparently jointly, have moved to dismiss the pending indictment,

alleging that the United States has violated its "obligations pursuant to Fed. R. Crim. P. 16,

*Brady v. Maryland*, and this Court's scheduling orders."[1]  The basis for this motion, at its core, is

that the government has recently produced too much discovery material, and the defendants

represent that they do not have time to review the material and prepare adequately for trial,

currently scheduled to begin on March 28, 2022.  Rather than file a motion for continuance,

which would be the remedy for what is alleged (even if true), the defendants instead resort to

making baseless, error-riddled, and demonstratively false claims of misconduct by the

government.

---

[1]  We say "apparently," as the motion was filed by defendant Peter Le "individually" but also "for the benefit of all" of the defendants.  Since then, defendants Young Yoo, Sascha Carlisle, Joseph Lamborn, and Sang Huynh have formally joined the motion (Dkts. 709, 712, 714, and 715).

We anticipated this filing at the status conference on January 5, 2022.  At that time, we expressed our view that, once the government produced its most sensitive discovery, *i.e.*, the FBI reports of interviews with potential trial witnesses, the defendants would cry foul and seek to delay the trial.  Although we did not expect accusations of professional misconduct (there being none), we did expect that we would be before the Court following the disclosure of those reports facing a delay in the trial.[2]

It is worth repeating what this case is about – nearly a decade of drug trafficking and violence by a street gang, the Reccless Tigers, culminating in the brutal murder of Brandon White on February 1, 2019.  White was beaten by David Nguyen, a gang member, over a drug debt owed to defendant Young Yoo.  After White testified against Nguyen at a preliminary hearing in Fairfax County, the gang retaliated.  Defendants Peter Le, Young Yoo, Joseph Lamborn, and Sascha Carlisle, along with three others, kidnapped White from a Falls Church shopping mall parking lot.  After driving to a residential neighborhood in Richmond, Peter Le, Yoo, and Lamborn dragged White into the woods, where they stabbed and shot him as he begged for his life.  The FBI found White's decomposed body in those woods ten months later.

White's murder was not the first act of witness intimidation by the gang.  The indictment details numerous other violent crimes intended to silence witnesses.  Even now, from jail, the gang has tried to intimidate potential witnesses with threats and posts on social media.  Sealed pleadings have circulated among gang members, even in California, and discovery materials

---

[2] At the conference, we raised three issues with the Court.  One, we alerted the Court that we had discovered that there was a then unknown quantity of material missing from the files we obtained from the Fairfax County Police Department, and we were undertaking an audit of all of the department's incident reports relating to this case to locate, if we could, anything that had not yet been produced.  Two, we advised the court that, in our opinion, the surge in Omicron cases in January would affect the ability of the parties to begin trial on February 7, 2022, the scheduled trial date at that time (which happened, as several defendants and incarcerated witnesses tested positive for COVID-19 shortly thereafter, and local jails went into lockdowns).  Three, we opined that the production of FBI interview reports and Jencks materials 30 days in advance of trial would cause the defendants to seek another continuance.

supposedly subject to protective orders has been found in jails.  The United States rightfully has serious witness safety concerns as trial approaches.

The government has interviewed numerous potential witnesses, and those interviews are memorialized in the reports recently produced to defense counsel.  The Court directed the United States to produce these reports, without redactions, 40 days prior to trial.  This is the *only* truly critical discovery produced in February 2022.  While there is no question that the defendants need these reports to prepare their defense, this production was expected.  It was not late nor untimely.  It was made consistent with the understanding of the parties and directives of the Court.[3]

The most recent production admittedly also includes far more additional discovery than we contemplated, and we acknowledge that the defense may need more time to review this material.  But to be clear, none of this additional material is exculpatory; there are few, if any Jencks statements; and hardly any of the information provided falls within the government's discovery obligations under Rule 16.[4]  More importantly, it will not take defense counsel "months" to review the additional discovery (working "full" or part-time).

---

[3] The unredacted production of interview reports of potential witnesses 40 days prior to trial is unusual in most gang-murder cases in this division.  In nearly all of the gang-murder cases in recent memory, defense counsel was given pre-trial access only to *redacted* interview reports on a read-and-return basis.  In those cases, defense counsel did not receive unredacted copies of reports until a week or less before trial.

[4] The Jencks Act and Fed. R. Crim. P. 26.2 define very precisely the government's discovery obligations.  Witness statements within the meaning of the statute and rule are written statements made or adopted by a witness, verbatim recorded statements of a witness, and the grand jury testimony of a witness.  Rule 16 is similarly clear and contains a list of information the government must produce: a defendant's statements and prior record; physical and documentary evidence material to preparing a defense, obtained from a defendant, or to be used by the government at trial; test results; and expert reports.  There are exceptions to these requirements.  Notably, Rule 16 excludes from discovery or inspection the reports or other government documents made in connection with the investigation or prosecution of the case.  In other words, much of what the government has produced does not fall within the literal scope of the statute and rules (*i.e.*, the "highly relevant and material police reports from Fairfax County" mentioned in the defendant's motion to dismiss).  We decided, however, to produce practically everything we collected regarding the gang's activities since approximately 2010, the persons charged in this case, and other gang members to provide the defendants with notice of the evidence the government will use at trial along with any possible impeachment information or evidence of bias pertaining to potential witnesses.

II.     **The Government's Discovery Productions Prior to February 2022**

The defendants were charged and arrested at various times in 2019.[5]  Since their arrests, the United States has provided extensive discovery.  The United States initially provided discovery on a rolling basis to each defense counsel.  In September 2020, this Court appointed a coordinating discovery attorney (CDA) who would collect and organize discovery for each of the defendants.  Our focus here is on the productions made to the CDA shortly following her appointment; however, it is important to note that the defendants had much of this discovery prior to the fall of 2020.[6]

After the CDA's appointment, the United States quickly produced the bulk of the discovery in this case.  More specifically, on October 26, 2020, the CDA received Eclipse Productions 1-15 and Native Productions 1-11.  *See* Attachment A.  We further understand that each defense attorney has had this material for review since December 2020.  Thus, the defendants have had the following in their possession for at least 16 months:  (1) Fairfax County Police Department (FCPD) incident reports, which form the basis of almost all the overt acts of gang activity prior to Brandon White's murder; (2) many of the affidavits in support of federal search warrants, which detail the evidence developed in during the investigation into Brandon White's murder; (3) cell-site data and draft analyses of where some of the defendants were located during the night Brandon White was kidnapped and murdered; (4) video and surveillance footage of Brandon White's beating and kidnapping, controlled purchases of narcotics, and the charged fire bombings, vandalism, and assaults; (5) social media returns, which document

---

[5]   Peter Le was arrested on February 15, 2019, in Virginia, followed by Sascha Carlisle on April 15 in Virginia; Joseph Lamborn on April 18 in California; Young Yoo on August 5 in California; Sang Huynh on August 20 in California; and Tony Le on October 30 in California.

[6]   The defendants began receiving formal discovery in this case by August 2019.  Over the course of the next year, each defendant received the bulk of the discovery.

4

extensive racketeering activity; (6) video and photographs of the gang's marijuana grow operation in Hayfork, California; (7) recorded jail telephone conversations; and (8) bank records detailing money laundering activity.  This material reflects the core evidence available to the government and, other than the potential witness interview reports, is practically everything the defense has needed to prepare for the non-murder related charges.

Since this main production in October 2020, the United States has continued to produce both documentary and native productions.  The pace and volume necessarily have slowed because the October 2020 production forms the bulk of the core discovery.  As detailed in Attachment A, Productions 16 through 25 contain thousands of photographs but substantially less documentary discovery.  Moreover, many of these photographs are from license plate readers installed near the homes that gang members allegedly firebombed.  While potentially relevant, these images are hardly time intensive to review — especially because the government has provided the time when the fire bombings took place.  Then, in January 2022, the United States produced all the photographic and forensic evidence connected with Brandon White's murder.

Finally, in February 2022, the United States produced documentary Productions 21 through 25.  In compliance with the Court's direction, these productions included: (1) FBI potential witness interview reports; (2) FCPD's homicide squad's report about Brandon White's murder, which also contained potential witness interviews; (3) the criminal histories of potential government witnesses; (4) recorded interviews with potential witnesses; and (5) a few phone exactions of potential witnesses' electronic devices.  All this information is critical discovery,

and all of this information was produced in accordance with the timeline set by the Court.
Significantly, as far as we know, none of this material contains exculpatory information.[7]

Facts do matter. Bold claims without supporting facts are mere hyperbole. The assertion
that the United States recently produced more discovery than in all the previous productions
combined is simply false. With the discovery produced in October 2020, the defendants have
possessed for almost 16 months much of the evidence associated with Brandon White's murder
and almost all the non-murder related discovery critical to their defense. The only missing
pieces, so to speak, were the interview reports of potential witnesses, which have now been
produced as contemplated by the Court's discovery orders that have been in place for years.

Further, the Court has taken every occasion to encourage defense counsel to consult with
the United States about discovery concern; if the government's response proved unsatisfactory,
the Court also encouraged defense counsel to bring promptly any discovery concerns to the
Court's attention. Prior to this motion to dismiss, the defendants have not raised a single
discovery concern. And yet now the defendants would have this Court believe that, prior to
February 2022, they have not been provided the discovery essential to the preparation of their
defense. This beggars belief.

---

[7] There have been no substantive motions filed, and we have had no meaningful discussions with defense counsel.
As a result, we are in the dark as to what defenses the six remaining defendants plan to raise at trial, and it is
difficult to assess whether the information produced by the government has any exculpatory value (beyond
impeachment). This is another reason we have produced considerably more information than what we are obligated
to produce under the pertinent caselaw, statutes, and rules. "*Brady* does not require the Government to investigate
the defense's theory of the case or create evidence that might be helpful to the defense." *United States v. Makarita*,
576 F. App'x 252, 262 (4th Cir. 2014); *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980) ("Truth, justice,
and the American way do not, however, require the Government to discover and develop the defendant's entire
defense."). As one court noted, "[i]f the rule were otherwise, it would 'place prosecutors in the untenable position of
having to prepare both sides of the case at once.'" *United States v. Rubin/Chambers*, 825 F. Supp. 2d 451, 454
(S.D.N.Y. 2011).

### III.     The Larger Than Expected Discovery Production in February 2022

In December 2021, we filed a Notice with the Court, informing all parties that we were potentially missing relevant discovery from FCPD.  In reviewing these reports for potential trial exhibits, we discovered that, in a few instances, the reports in our possession may have been subsequently updated, and we need to obtain the updated version of the report.[8]  In addition, some of the incident reports referenced other potentially discoverable information or material (*e.g.*, evidence seized, photographs, search warrants, etc.) that we had not received or inspected (if, in fact, the materials remained in police custody).  This effort involved reviewing each of the over 800 incident reports relevant to the investigation of this case.[9]  That effort had not been completed as of January 5, 2022, when the Court convened a status conference.  We explained at that time we were unable to estimate the volume of additional discovery that would have to be produced as a result of this review.

We have worked diligently to identify all the relevant discovery in FCPD's custody. Unfortunately, during this process, we discovered that FCPD possessed more electronically stored information than we anticipated.  We also learned that the Fairfax County Fire Marshal's Office possessed thousands of images that we may not have previously obtained.  As a result, on

---

[8]  Incident reports have a unique case number beginning with the year of the incident.  Some reports are only a few pages, and the "investigation" is closed shortly after the first police interaction.  Other incidents are investigated for weeks or months, and many supplements are added to the initial report.  There were some incident reports provided to us before the cases were closed, so we checked to make sure we had received all of the supplements to those reports.

[9]  This effort was not rocket science, just tedious.  We re-read each incident report and noted when it was "printed" electronically to determine if it needed updating and whether the report concerned a defendant or potential witness, fell within the relevant timeframe alleged in the indictment, or referred to the seizure of evidence (*e.g.*, drugs, weapons, cash, phones) or to a search warrant, photograph, or other document.  We then checked those results against the evidence already inspected by the FBI from the FCPD property section.  Finally, we sent a list of incident reports to the FCPD to check their records again for any additional information from these cases.  In some instances, we were able to contact the reporting officer or detective to see if he or she had kept any records not otherwise maintained in the official file.  In some cases, the officers or detectives have retired, but even then, we asked that, if possible, they be contacted.  We also checked court records for missing search warrants.

February 16, 2022, we shipped a hard drive containing several terabytes of additional electronic

discovery.  Critically, we have not identified anything in this discovery production, documentary

or electronic, that we believe contains any *Brady* information.

Moreover, while the remaining defendants understandably may need time to review this

information, none of the information is "everything the defendant has needed to prepare his

defense for the past 2.5 years."  To the contrary, most of this recently produced information is

either cumulative or tertiary to the charges and includes: (1) thousands of photographs taken by

license plate readers placed near residences that were firebombed; (2) surveillance footage taken

at or near residences that were firebombed; (3) information associated with uncharged fire

bombings that may not even be connected to this case; and (4) the reports associated with

approximately 15 electronic devices.  We believe that perhaps three or four of these reports may

be of interest because they belong to potential witnesses who may testify about Brandon White's

kidnapping and murder, and we anticipate that at trial the government may use a scintilla of this

information in court.

Discovery is always an ongoing process.  We should obtain whatever information the

FCPD has found by early next week (March 7), which we will then produce as expeditiously as

possible.  As we prepare for trial, we will necessarily produce additional information obtained

during interviews and other ongoing investigative steps.

## IV.    The Appropriate Standard and Remedy

The defendants ask the Court to dismiss the indictment for the government's alleged

discovery violations.  They cite no caselaw for this remedy because there is none.  Absent some

egregious government misconduct or evidence of bad faith, the issue before the Court is simply

whether the defendants have adequate time to prepare for trial in light of the information and

material disclosed by the government and the defendants' representations as to how much time is

needed to review this material.  Whether it is a Rule 16, Rule 26.2, *Brady*, or *Giglio* issue, if the

Court determines that the defendants need more time to make use of the government's

disclosures, a continuance should be granted.[10]  A more severe sanction, such as that advocated

by the defendants, would be an abuse of discretion.  *United States v. Sterling*, 724 F.3d 482, 512

(4th Circuit 2013) (holding that the district court abused its discretion in striking government

witnesses rather than granting a continuance as a sanction for the government's late disclosure of

*Giglio* information).

The government concedes that it has produced a voluminous amount of discovery since

2019.  Voluminous discovery, absent some showing that the government acted in bad faith, is not

a discovery or due process violation, and federal courts have uniformly so held.  *United States v.

Stanford*, 804 F.3d 557, 572 (5th Cir. 2015) (rejecting defendant's claim that the sheer quantity

of data provided by the government violated *Brady*); *United States v. Richards*, 659 F.3d 527,

544-45 (6th Cir. 2011) (finding that there was no violation of Rule 16 by the government when it

identified over 20,000 images as possible trial exhibits, in the absence of evidence that the

government acted in bad faith or attempted to obfuscate the relevant documents by burying them

under and avalanche of irrelevant materials); *United States v. Gray*, 648 F.3d 562, 567-68 (7th

Cir. 2011) (rejecting the argument that the government violated *Brady* by failing to extract data

from a mass of electronic information that would support a defense theory).  The defendants'

---

[10] The suppression of evidence or dismissal of charges are extreme sanctions reserved for parties who violate the discovery rules intentionally and in bad faith. *See Taylor v. Illinois,* 484 U.S. 400, 415-417 (1988).  Absent a finding of bad faith, "[a] continuance is the preferred sanction." *United States v. Hammoud,* 381 F.3d 316, 336 (4th Cir. 2014); *see Taylor,* 484 U.S. at 413 ("alternative sanctions are adequate and appropriate in most cases," including "granting a continuance or a mistrial to provide time for further investigation"); *United States v. Golyansky,* 291 F.3d 1245, 1249 (10th Cir. 2002) ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings.").

arguments here are much like those in *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010).  Skilling argued that the voluminous amount of information provided by the government (several hundred million pages of documents) prevented him from effectively reviewing the disclosure and, therefore, the government must have suppressed exculpatory evidence.  The court found that these unsupported allegations of improper conduct fail.  In the "absence of evidence that the government used the open file [discovery] to hide potentially exculpatory evidence of otherwise acted in bad faith, we hold that the government's use of the open file did not violate Brady." *Id.* at 577.  *See also United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2nd Cir. 2018) (finding no *Brady* violation in the manner in which the government produced the defendant's cell phone records, consisting of thousands of text and image files).

## V.    Speedy Trial

In their motion to dismiss, the defendants make a passing reference to an otherwise undefined "violation of speedy trial.  The defendants presumably are claiming that the alleged violations of discovery cannot be remedied by a continuance because a continuance would violate the defendants' rights to a speedy trial.  The argument fails, of course, because there have been no discovery violations, and the Court should treat the defendants' claims about the voluminous discovery as a motion for a continuance.

Finally, if the Court, in it is discretion, determines that a continuance is appropriate, the Court is obligated, as it has it the past, to make findings that the continuance is necessary "in the ends of justice" after considering the factors enumerated in the Speedy Trial Act, 18 U.S.C. § 3161(h)(7).  We suggest that these findings include that the case remains complex due to the number of defendants and the nature of the prosecution, and the volume of pre-trial discovery

would make it unreasonable to expect adequate preparation for trial prior to whatever new trial date the Court sets.  *See United States' Response in Opposition to Defendant Tony Minh Le's Motion to Dismiss Indictment*, filed July 21, 2021 (Dkt. 607).

## CONCLUSION

The defendants' motion should be denied.  They have cited no facts and no law supporting dismissal of the case.  The defendants have represented, however, that they are "unable to defend this case" and that they will need "months to review" the recently produced discovery.  We disagree with that assessment, but given these representations, we ask that the Court inquire of each defense counsel, the following:

- Have you received all of the discovery produced by the government thus far, including the most recent production, either directly from the government or through the CDA, and are you able to access and view all of the files provided?

- Will you have an adequate amount of time to review all of the discovery provided by the government by March 28, 2022, and to review the discovery with your client?

- Will you have an adequate amount of time to prepare for trial on March 28, 2022, given the amount of time you must spend reviewing the discovery provided by the government?

- Will you be able to provide effective assistance at trial for your client if the trial begins on March 28, 2022?

- Do you believe your client will suffer prejudice if the trial begins on March 28, 2022?

Finally, in their motion, the defendants include an email from the CDA to government counsel and an exhibit of the file folders of certain discovery productions.  The defendants also represent that it will take weeks for the CDA to process the recent production, and apparently only one defense counsel is in possession of a complete copy of the government's recent

11

production.  We submit that it would be prudent to require the CDA to be present by telephone at the upcoming hearing to inform the Court when the production will be distributed to the other defense counsel.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
James L. Trump
Carina A. Cuellar
Ryan Bredemeier
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3726
Email: jim.trump@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, I caused the foregoing pleading to be sent to counsel of record through the Court's ECF system.

      /s/

James L. Trump
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3726
jim.trump@usdoj.gov
