```
                    UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA


     UNITED STATES OF AMERICA,        :
                                      :
                    Plaintiff,        :   Criminal Action Number:
                                      :   1:19-CR-57
              v.                      :
                                      :
     PETER LE (1), JOSEPH             :   September 12, 2022
     DUK-HYUN LAMBORN (5), YOUNG      :   10:08 a.m.
     YOO (13),                        :
                                      :
                                      :
                    Defendants.       :
                                      :
     ............................ :
```

### TRANSCRIPT OF SENTENCING PROCEEDINGS
#### BEFORE THE HONORABLE LIAM O'GRADY,
#### UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the United States:     **James L. Trump, Assistant U.S.
                           Attorney**
                           United States Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314
                           703-299-3700
                           Email: Jim.trump@usdoj.gov

                           **Carina Cuellar, Assistant U.S.
                           Attorney**
                           United States Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314
                           703-299-3700
                           Email: Carina.cuellar@usdoj.gov

                           **Ryan Bredemeier, Assistant U.S.
                           Attorney**
                           United States Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314
                           703-299-3700
                           Email: Ryan.bredemeier@doj.gov

APPEARANCES:  (Cont.)

For Defendant Peter Le:         **Lana Marie Manitta, Esq.**
                                The Law Office of Lana Manitta,
                                PLLC
                                140B Purcellville Gateway Drive
                                #511
                                Purcellville, VA 20132
                                703-705-4428
                                Fax: 703-705-4429
                                Email: Lmanitta@manittalaw.com


For Defendant Joseph            **Pleasant S. Brodnax, III, Esq.**
Lamborn:                        Law Office of Pleasant S. Brodnax,
                                III
                                1701 Pennsylvania Avenue, NW
                                Suite 200
                                Washington, DC 20006
                                202-462-1100
                                Fax: 202-204-5165
                                Email: Pleasant.brodnax@gmail.com

                                **Alan H. Yamamoto, Esq.**
                                Law Office of Alan Yamamoto
                                643 S. Washington St
                                Alexandria, VA 22314
                                703-684-4700
                                Fax: 703-684-6643
                                Email: Yamamoto.law@verizon.net


For Defendant Young Yoo:        **Christopher Bryan Amolsch, Esq.**
                                Law Office of Christopher Amolsch
                                12005 Sunrise Valley Drive
                                Suite 200
                                Reston, VA 20191
                                703-969-2214
                                Fax: 703-774-1201
                                Email: Chrisamolsch@yahoo.com

APPEARANCES:   (Cont.)


Court Reporter:                      **Scott L. Wallace, RDR, RMR, CRR**
                                     Official Court Reporter
                                     United States District Court
                                     401 Courthouse Square
                                     Alexandria, VA 2231-5798
                                     Office: 703-549-4626
                                     Cell: 202-277-3739
                                     Email: Scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

<u>**MORNING SESSION, SEPTEMBER 12, 2022**</u>

1

(10:08 a.m.)

2

THE COURTROOM CLERK:  The Court calls *United States of*

3

*America versus Peter Le, Young Yoo, Joseph Duk-Hyun Lamborn*,

4

Case No. 1:19-cr-57.

5

May I have appearances, please, first for the government.

6

MR. TRUMP:  Jim Trump on behalf of the United States.

7

MS. CUELLAR:  Carina Cuellar.  Good morning.

8

MR. BREDEMEIER:  Ryan Bredemeier.  Good morning, Your

9

Honor.

10

THE COURT:  Good morning.

11

MS. MANITTA:  Lana Manitta and Jesse Winograd for Peter

12

Le.

13

THE COURT:  Good morning.

14

MR. YAMAMOTO:  Good morning, Your Honor.  Alan Yamamoto

15

and Pleasant Brodnax for Mr. Lamborn.

16

THE COURT:  All right.  Good morning.

17

MR. AMOLSCH:  Good morning, Your Honor.  May it please the

18

Court?  Chris Amolsch for Young Yoo.  Frank Salvato is tied up in

19

another courtroom.

20

THE COURT:  All right.  Good morning to you.  Good morning

21

to each of you.  All right.

22

MR. TRUMP:  Your Honor.

23

THE COURT:  Yes, sir.

24

MR. TRUMP:  Here today is Ms. Carina Worthey, Brandon

25

1  White's mother; Jerry Butler, his stepfather; Aaliyah, sister;

2  Naeem, his brother; Mohammed, Hakim, Zay, and Veronica, all

3  cousins.

4        I don't know how the Court wishes to proceed.  We would

5  ask that Ms. Worthey be permitted to speak.  I think it's her

6  right to speak and that she do so collectively so she doesn't

7  have to address each defendant separately.  I have very little to

8  say about the legal aspects of the sentencing.  So if it's all

9  right with the Court, I would like to save my comments until

10 after Ms. Worthey speaks.

11       THE COURT:  Yes, I would like to have Ms. Worthey speak

12 first.

13       Are there any other witnesses that any defense counsel

14 intends to call?

15       MS. MANITTA:  Not on behalf of Peter Le.

16       THE COURT:  All right.  So why don't we have Ms. Worthey

17 address the Court.

18       MR. TRUMP:  If you would, Your Honor, can we go through

19 the sentencing guidelines and the legal aspects of it first

20 before --

21       THE COURT:  Okay.

22       MR. TRUMP:  -- she addresses the Court?

23       THE COURT:  Yes.  Okay.  Let's begin with Peter Le.

24       And does the government have any objection to the

25 guideline presentence report or the guideline range on Peter Le?

```
 1          MR. TRUMP:  No, Your Honor.

 2          THE COURT:  Okay.  Ms. Manitta, any objection to the

 3   guideline range on Peter Le?

 4          MS. MANITTA:  No, Your Honor.  May I?

 5          Would you like me at the podium?

 6          THE COURT:  Yes, please.  Come to the podium so we make

 7   sure you get -- you've objected on Eighth Amendment grounds.

 8          MS. MANITTA:  Exactly.  We had no objection to the

 9   calculation according to the U.S. Sentencing Guidelines.  We just

10   have a general Eighth Amendment Constitutional objection.

11          THE COURT:  All right.  As did Mr. Yoo, so we'll --

12          All right.  Mr. Le, have you gone over the presentence

13   report, sir?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Yes?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Any objection to the contents of

18   the report?  Any additions you want to make at this time?

19          THE DEFENDANT:  No.

20          THE COURT:  All right.  Have a seat.

21          I'm going to order that the report be filed without

22   amendment, then.  Collectively, the guideline range is adjusted

23   offense level of 49, and the -- it's adjusted to a level 43

24   pursuant to the guidelines, and results in Counts 1, 3, 4, 5, 6,

25   7, life imprisonment; on Counts 8 through 12 and 21, up to
```

1  240 months under the guidelines for each count; and Count 16 is

2  60 months, which must run consecutive to all other counts, and

3  either a period of three to five years of supervised release on

4  each of the counts.

5          And I'll reserve allocution on each individual's

6  sentencing until they're called back up.  Is that --

7          MR. TRUMP:  Yes, that's our understanding, Your Honor, for

8  the maximum sentences.  And in our pleading -- at the end of the

9  pleading, Ms. Cuellar has included a table with our recommended

10 sentence for each count.

11         So for Count 1, it was life; Count 3, life; Count 4, life;

12 Count 5, life; Count 6, 30 years; Count 7, life; Count 8, five

13 years; Count 9, five years; Count 10, five years; Count 11, 41

14 months; Count 12, 10 months, and all of those to run

15 concurrently.  And Count 21, 240 months, and then the 60-month

16 consecutive sentence on Count 16.

17         THE COURT:  16.  Right.  Well, maybe I misunderstood you,

18 Mr. Trump.

19         Do you want us to go through with our sentencings on each

20 one of the defendants?

21         MR. TRUMP:  No, just this part of the sentencing hearing.

22         THE COURT:  Right.

23         MR. TRUMP:  And then you can hear from Ms. Worthey.

24         THE COURT:  Right.  That's what I thought you meant, and

25 that's fine.

1          So, Ms. Manitta, did you want to be heard on the Eighth

2    Amendment argument?

3          MS. MANITTA:  No, Your Honor, we'll rest on our papers on

4    that, and I just want to be heard briefly as to the recommended

5    sentences as to especially the non-mandatory life counts.  Aside

6    from our --

7          THE COURT:  Why don't I -- that's what -- I'd like to do

8    this individually after Ms. Worthey has spoken, so that I give

9    each individual defendant, after she has made her comments, an

10   opportunity to speak if each defendant would like to.  So I'll

11   hear you in a moment.

12         Does that make sense to everybody now?  So let's --

13   Mr. Amolsch, have you had an opportunity to go over the

14   presentence report yourself and also with Mr. Yoo?

15         MR. AMOLSCH:  Yes, Your Honor, we reviewed it via Zoom

16   connection at the jail with Mr. Yoo.

17         THE COURT:  Okay.  And you've made the same Eighth

18   Amendment argument that Ms. Manitta -- any other objections to

19   the report?

20         MR. AMOLSCH:  No objection, Your Honor.  We don't -- the

21   only other objection I had, Your Honor, to the extent it matters,

22   is the probation officer assigned a two-level enhancement for

23   obstruction of justice.  It still takes the defense level down to

24   43.  It doesn't change any of the statutory requirements.  I

25   don't think it would have any impact on his designation or any

1    other aspect of the sentence.  But having said that, I did -- I

2    don't think the obstruction is appropriate.

3          I'm not going to make an argument about it.  I'm just

4    bringing that to the Court's attention.  And for time purposes,

5    I've spoken with Mr. Yoo, and he will not be allocuting, Your

6    Honor, given his appeal rights.  And we'll provide no evidence or

7    other argument.

8          THE COURT:  Okay.  Thank you.

9          Mr. Yoo, did you go over the presentence report?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Any objections or additions you want to make

12    to the report at this time?

13         THE DEFENDANT:  No, no.

14         THE COURT:  All right.  All right.  Thank you.  Have a

15    seat, then.

16         Well, I think the obstruction was appropriately given in

17    the case, and Mr. -- if nothing other than Mr. Yoo having given

18    the clothing and the knife after the murder to Mr. Park to

19    destroy, and which Mr. Park proceeded to burn the clothing and

20    bury the knife, of course, the -- ordering Mr. Nguyen to assault

21    Mr. White would also be an obstruction, as well as the decision

22    to murder Mr. White.  All of those are obstructive acts, I think.

23         So your exception is noted, but I'm going to find that the

24    objection is appropriate --

25         MR. AMOLSCH:  Thank you.

1        THE COURT:  -- that the obstruction is appropriate.

2        MR. AMOLSCH:  Thank you, Your Honor.

3        THE COURT:  All right.  That results in a collective

4    guideline range of 45, adjusted down to a 43 for Mr. Yoo, which

5    results in a guideline range of life for Counts 1, 3, 4, 5, 6,

6    and 7, and up to three -- up to five years -- minimum of five

7    years of supervised release for each.  And there's a restitution

8    payment for each of the defendants, which I'll address later.

9        All right.  And so, thank you, Mr. Amolsch.

10       MR. AMOLSCH:  Yes, sir.

11       MR. TRUMP:  Judge, you reminded us, I will -- we have a

12   restitution order similar to the one that was entered in the

13   Sascha Carlisle sentencing, and we'll submit it to chambers.

14       It's a total of about $5,000 or so.

15       THE COURT:  I think it's 69.

16       MR. TRUMP:  We left --

17       THE COURT:  $6,492 or less than that.

18       MR. TRUMP:  There was something missing from the Carlisle

19   order, which we're not going to try to amend at this point, but

20   we will submit the restitution order to chambers.  The

21   restitution is not joint and severable anymore.  It's only one

22   payment that is shared by all defendants who are ordered to pay

23   restitution.

24       THE COURT:  Okay.

25       MR. TRUMP:  And our recommendation, Judge, on Counts 1, 3,

```
1    4, 5, and 7 is life, and on Count 6, 20 years.

2         THE COURT:  All right.  Thank you.

3         All right.  Let's address Mr. Lamborn's, Mr. Yamamoto.

4         Good morning.

5         MR. YAMAMOTO:  Good morning, Your Honor.

6         THE COURT:  I read your sentencing memorandum.

7         Do you have any objections you want to note for the

8    presentence report at this time?

9         MR. YAMAMOTO:  Just one correction, Your Honor.  He and

10   his wife were married in Houston, Texas, not in Florida.  Other

11   than that, no objections or corrections.

12        THE COURT:  All right.  We'll make that amendment.

13   Obviously, it doesn't affect the sentencing or the guideline

14   calculation.  I find that the report is otherwise accurate and

15   that the presentence -- that the guideline calculation is

16   accurate and results in a guideline range of -- adjusted offense

17   level of 49, which is amended to a 43 pursuant to the guidelines,

18   and that as a result of Mr. Lamborn being a criminal history

19   category 4, a life sentence for Counts 1, 3, 4, 5, 6, and 7, and

20   Count 13, which must be run consecutive to other counts, and five

21   years of supervised release, and the restitution payment.

22        Mr. Lamborn, did you read the presentence report, sir?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Any corrections or additions you want made to

25   the report at this time?
```

1          THE DEFENDANT:  No.  Other than the ones he said, no.

2          THE COURT:  Okay.  Thank you, sir.  You may sit down.

3          All right.  Thank you, Mr. Yamamoto.

4          MR. YAMAMOTO:  Thank you, Your Honor.

5          THE COURT:  Mr. Trump.

6          MR. TRUMP:  And again, we'll have a restitution order for

7    Mr. Lamborn as well.  And for Counts 1, 3, 4, 5, and 7, we ask

8    the Court to sentence the defendant to life, concurrent sentences

9    of life.  On Count 6, a concurrent sentence of 15 years, and on

10   Count 13, a consecutive sentence of life imprisonment.

11         THE COURT:  Okay.  Thank you.

12         All right.  Then I'll hear from Ms. Worthey at this time,

13   and any --

14         MR. TRUMP:  May she come up?

15         THE COURT:  She may.  Sure.

16         MS. WORTHEY:  Good morning.

17         THE COURT:  Good morning.

18         MS. WORTHEY:  First, I want to start by saying thank you

19   to all that put their hands and head together to give me and my

20   family justice and closure, so I want to thank you, Your Honor,

21   Mr. Trump, Ms. Carina, and Mr. Ryan.

22         I want to say a lot of children are murdered every day,

23   but Brandon was slaughtered.  He was mutilated.  Animals are

24   killed with more integrity than what they did to my son.  They

25   left him dead like a dog.

```
1        You took away my son.  Brandon was a brother, grandson,
2   father, and an uncle.  He was a special person.  He was my child.
3        You took him away from his daughter that will never see
4   her dad anymore.  She will grow up with no dad.  Brandon won't
5   see his daughter go to her first day of kindergarten, the most
6   exciting day of all parents, and to see her graduate from school,
7   have kids or even grow up to be a young lady.  You took that away
8   from her.
9        You really affected my family mentally.  January 31st will
10  be engraved in my heart until I see my son again.  I want you to
11  know I don't forgive none of you-all for what you did.  And the
12  sentence you get here today, I hope it teach you a lesson.  You
13  don't take someone's precious life because you think they did
14  something wrong.  Brandon took an oath and did what he was
15  supposed to do and testified, and because of that, you took my
16  baby's life.  Every breath of air you take is one taken away from
17  my son.  My family never did a thing to you, but you have caused
18  so much pain.  Your crime has had a permanent effect on my
19  family, and for what, I don't know.
20       You have forced me into becoming another statistic,
21  another black mother grieving the murder of her son.  You will
22  never know what it's like to be a mother loving a child that I
23  would never touch again, hear his voice again.  You ripped away a
24  piece of me that left an open wound in its place.
25       Brandon was a loving person.  He was a happy-go-lucky kind
```

1    of kid.  He had a heart of gold, a smile that lit up a room.  He

2    was the kind of person that made you smile, made a bad day into a

3    good day.  He was loved by so many, especially his family.

4         You know that saying that says you can run but you can't

5    hide, that's what happened.  They tried to run, but they couldn't

6    hide for too long because Brandon had a praying family that

7    prayed for 11 months for us to find him.  Some family don't have

8    closure, but we was able to get closure for my son.  Even though

9    when we found Brandon it wasn't the way we wanted to find him,

10   but we was able to have closure.  I'm able to go to the gravesite

11   and visit my son.  It affected my mom so bad that she was

12   heartbroken, and she died five months after we buried Brandon.

13        Brandon had a love of motorcycles.  He loved trucks.

14   He -- when he was six years old and me and him would be in a car,

15   he would be like, "Mom, you know that green car right there, that

16   truck ride there, that's Hazel and Company, I'm going to drive

17   for them one day," the trucking company.

18        I said, "Brandon, you're going to be a construction

19   worker?"

20        He said, "Yeah.  You hear that car?  You hear how it's

21   making that noise?"

22        I said, "Yeah, Brandon."

23        He said, "Oh, it's Jake Braking, that means it's slowing

24   down."  He just had a love of motorcycles, cars.  He wanted to be

25   an aviation mechanic.  He even went to school for that.  And they

 1    took that away from him.

 2         I want to say morals encourage only -- my son was only

 3    21 years old, but he did the right thing when it was difficult.

 4    He had morals and courage.  Most of us cannot say this.  This

 5    will never get better.  9-1-1 -- 9/11 never gets better.  Today

 6    is about Brandon; it's not about the murderers.  Their name will

 7    not be remembered; Brandon's name will.  If they -- if others had

 8    this courage, then the gang may have been disrespected years ago.

 9         I just want to let you know, Your Honor, it took me

10    three years to face these kids, and they took a special person.

11    As you can see behind me, he had a family that loved him, and

12    that's all I could say right now.

13         THE COURT:  Well, once again, I'm so sorry for your loss

14    and for you and for your family, and thank you for having the

15    courage to come up and speak this morning.  Thank you very much,

16    and --

17         MS. WORTHEY:  Thank you.

18         THE COURT:  -- God bless.

19         All right.  Then let's begin with Peter Le.

20         Ms. Manitta, any further argument on sentencing?

21         MS. MANITTA:  Well, we actually agree with a few

22    exceptions, and aside from our general Eighth Amendment

23    objection, with many of the government's recommended sentencings

24    that appear on pages 23 and 24 of their position paper and which

25    Mr. Trump recited.  The exceptions that we note, however, are in

1    order to, as we see it, avoid sentencing disparities within this

2    case and within similar cases, even conspiracies of similar

3    breadth, and specifically with respect to the money laundering

4    count, to more accurately reflect the seriousness of the offense.

5         And so our request would differ in the following respects:

6         As to Count 1, we are asking for 180 months.

7         As to Count 4, 180 months.

8         As to Count 6, 180 months.

9         And as to Count 21, 120 months.

10        And we also would request, on behalf of Mr. Le, for a

11   recommended designation to Victorville or a facility as close to

12   Orange County California as possible, and a recommendation to

13   participate in RDAP if and when he might become eligible to do

14   so.

15        THE COURT:  Tell me again the designation request.

16        MS. MANITTA:  Victorville.

17        THE COURT:  Victorville, okay.

18        MS. MANITTA:  Or as close to Orange County, California as

19   possible.  That is where his family is.

20        THE COURT:  Okay.

21        MS. MANITTA:  Thank you, Your Honor.

22        THE COURT:  All right.  Thank you.  Mr. Trump.

23        MR. TRUMP:  We stand by our position paper, Judge, in

24   terms of the sentences for Mr. Le, and we would ask that the

25   Court not make that recommendation in terms of placement.

1     In discussing matters with BOP, the gang activity in

2   California, and specifically some of the gangs associated with

3   the Reccless Tigers, there are a large number of gang members in

4   those prisons.  And as a result, we would not ask the Court to

5   make any recommendation of placement; we would ask that that be

6   left to the Bureau of Prisons.

7     Judge, there's not much I can say other than to echo the

8   comments of Mrs. Worthey.  Yesterday was the 21st anniversary of

9   the 9/11 terrorist attacks, and 21 years later, we still remember

10   those things very vividly.  In fact, I was in this building in a

11   trial with Mr. Yamamoto, and in fact, the trial concerned a

12   defendant who had kidnapped and killed a young man who testified

13   against him at a preliminary hearing in Fairfax, and I went to

14   the eighth floor, and I watched the flames come up from the

15   Pentagon.  And as a nation, we mourn the death of 3,000 innocent

16   victims, and every year since then we say, "Never forget, never

17   forget."

18     Well, Ms. Worthey lost her son Brandon.  Her sadness, her

19   pain, her grief is just as great, just as overwhelming, as it was

20   for any of those families who lost loved ones in 9/11, and the

21   death of her son is equally as tragic and as senseless, and she

22   will grieve forever.  And while you can tell she is strong and

23   she will heal and she will take care of her family, she will

24   never, never be the same.  But sadly for her and her family,

25   every January 31st, there will be no public commemorations, there

1  will be no outpouring of sympathy or remembrances, there won't be

2  any parades or memorial services, no moments of silence at

3  football games with flyovers, no wreath-laying ceremonies.  She

4  will be alone.

5       And why?  Why did Brandon White deserve to die because he

6  took the witness stand in a courtroom much like this one and he

7  said that David Nguyen was the person who assaulted him?

8  Everyone knew that was true.  David Nguyen, DD, he took a video

9  of it.  There were other witnesses there.  DD did not get

10  arrested because of Brandon White; he got arrested because he was

11  stupid enough to assault someone in a public place in front of

12  half a dozen witnesses.  And that's why Brandon White was killed.

13       And was killing Brandon White going to prove that the gang

14  was more than just a bunch of kids screaming, "Tiger Gang, T's

15  up," at clubs and at parties?  Was it going to prove that Peter

16  Le wasn't the chump the gang thought he was a year before when

17  they beat him up in front of the Way of Ink?  Or did Young Yoo

18  think that he had to make things right because he was the one who

19  got DD arrested in the first place?  And Joseph Lamborn, the

20  aspiring rapper, was this going to put things right with Tony Le?

21  After all, he was around at the very beginning, the very origins

22  of the gang, yet no one respected him.

23       What we know now is that what they did was incredibly

24  stupid.  It proved nothing more than that.  Tough guys don't need

25  guns to prove they're tough or that they need five or six of

1  their buddies to take care of their business, one skinny

2  defenseless kid.  Do they care?  I don't know.

3      At no time have we seen any expression of remorse.  Peter

4  Le went off to New York with his girlfriend a few days later.

5  Young Yoo added some drops of blood to his tattoo.  A few weeks

6  later, he was in North Carolina riding around on little choo-choo

7  trains in a shopping mall with his buddies Wolf, Knuckles.  And

8  Lamborn was posting rap videos with a gun saying, "It was a gift

9  from my homie.  I earned it" and having a good time with Starter

10 in Vegas getting his gravedigger tattoo.

11     And the consequences: a family shattered and life

12 sentences for three young men and 20 or so more convicted of

13 various crimes related to this gang.  Was it worth it?  I doubt

14 they think so now.

15     But, Ms. Worthey, I promise you, we will remember your

16 son.  We will always remember Brandon, and so will they.  Thank

17 you.

18     THE COURT:  Thank you, Mr. Trump.

19     All right.  Mr. Le, come to the podium, please, sir.  Do

20 you want him to stay there, or can he come to the podium?

21     MS. MANITTA:  Your Honor, similarly to Mr. Le, he will not

22 be allocuting because of the potential appeal.

23     THE COURT:  Okay.

24     MS. MANITTA:  But would you like him here at the podium?

25     THE COURT:  No, that's all right.  He can stay there,

1   then.

2          Is that correct, Mr. Le?  You have a right to -- you have

3   a right to allocute, to speak with me, before I sentence you, and

4   you need to remember that any -- and I'm sure Ms. Manitta has

5   told you -- anything that you say here today could be used

6   against you in a future hearing if the case was reversed for some

7   reason or there was some other reason why your statements were

8   important.  So if you wish not to speak this morning, that

9   certainly is your right.

10          Is that what you've decided to do after speaking with

11   Ms. Manitta?

12          THE DEFENDANT:  Yeah, that's fine.  Thank you.

13          THE COURT:  Okay.  All right.  Have a seat.

14          And I'm glad that you're all present so I can begin these

15   sentencings addressing you collectively.  I can't say much more

16   than what Mr. Trump has said here this morning and also in the

17   pleadings that he and Ms. Cuellar and Mr. Bredemeier filed.

18          But this murder was such a terrible and senseless crime.

19   You took a young man who was involved in the Reccless Tigers, who

20   owed a drug debt like so many other young line distributors,

21   members of the Reccless Tigers and their related gangs; a debt

22   that was years old, yet you decided to target Brandon White for

23   beating, and then you took his life because he had the nerve to

24   come forward and testify against a fellow gang member who had put

25   him in the hospital with serious injuries, and because he thought

```
 1    justice should be done, and that somebody who beats another
 2    person should face the consequences.  Shame on all of you.  How
 3    senseless.
 4         It happened because of your success in exploiting young
 5    high schoolers who you welcomed to the gang, who then pedaled
 6    marijuana to middle and high schoolers, making you-all lots of
 7    money, and that you wanted to make sure that that would continue.
 8    So you used violence against all who got behind in their
 9    payments; beating them, threatening them, threatening their
10    families, firebombing their parents' homes, 12 different
11    firebombings, smashing car windows, any act of violence that you
12    knew would communicate how dire the circumstances were for those
13    people who owed you money so that you could enrich yourselves and
14    then reward yourselves.
15         And it cost Mr. White's life, ruined the lives of so many
16    other young people, and you happily used them for your own
17    benefit.  It was so disturbing to hear some of the witnesses that
18    came in and testified as members of this conspiracy about how
19    they had begun distributing marijuana for you-all when they were
20    14 or 15 or -- and that they had also been using marijuana at
21    that same time, and probably three or four of those witnesses
22    will never recover from their own drug use, which you enabled and
23    will never live normal lives.
24         And you did that all intentionally to benefit yourselves.
25    You-all took part in the planning and the execution of Brandon
```

1    White, and then attempted to cover it up unsuccessfully.  That's

2    why you're all facing mandatory life sentences.  It's well-earned

3    and deserved.  There's no Eighth Amendment argument that would

4    preclude these life sentences.  You weren't 14 or 16 when these

5    events occurred.  You were adults, and these acts and the

6    kidnapping and the murder of Mr. White was planned and

7    intentionally conducted, and you had been thinking about it for

8    many months.

9         Mr. Park, you -- Mr. Le, Park Le, you took over the gang

10   after Tony Le, your brother, went west.  You individually were

11   responsible for continuing the violence and the distribution of

12   the drugs.  You did so while you were living comfortably and

13   enjoying the proceeds and were very involved in the decision to

14   kidnap and murder Brandon White, and are individually very

15   deserving of the sentences that the guidelines have recommended.

16        On Counts 1, 3, 4, 5, and 7, I'm going to sentence you to

17   life.  Those sentences will run concurrently with each other.

18        On Count 6, I'm going to sentence you to 30 years of

19   imprisonment to run concurrently with the other sentences.

20        On Counts 8 through 12 and 21, I'm going to sentence you

21   to 240 months on each to run concurrently.

22        On Count 1 -- on Count 16, 60 months to run consecutive to

23   all other counts.

24        I'll sentence you to $1300 in special assessment fees.

25   I'll order that you make restitution in an amount to be

 1    determined shortly after this hearing.  And I'll sentence you to

 2    five years of supervised release on Counts 1 through 7 and 11

 3    through 16; and three years as to Counts 8 through 10 and 21.

 4    Those periods of supervised release will run concurrently.

 5         As special conditions of supervised release, I'll order

 6    that you apply all moneys received to make the restitution

 7    payment; that you provide a probation officer with any financial

 8    information; that you not have any contact with gang members;

 9    that you participate in drug program as approved by the Probation

10    Office if it's determined you need it; and also participate in

11    mental health treatment.

12         I will tell each of you, these are life sentences.  I

13    don't know whether you'll do life in the penitentiary or not.

14    Congress will decide that.  So you need to decide how you're

15    going to live your lives while you are in prison, and I hope that

16    you will try to come to an understanding of why you did what you

17    did, seek mental health treatment while you're in prison, seek

18    drug treatment, and I'll recommend that you be evaluated for the

19    residential drug program, Mr. Le, and the other; Mr. Yoo,

20    Mr. Lamborn.

21         And that if you ever are allowed out of the penitentiary,

22    that you put yourself in a position where you can actually come

23    back and join members of your family and make a contribution to

24    the community instead of reverting to the type of behavior which

25    resulted in these sentences.

1          Anything else in Mr. Le's sentencing that I've missed?

2          MR. TRUMP:  I assume you will give them the notice with

3     respect to appellate rights at the end.

4          THE COURT:  Yeah.

5          Mr. Le, you went to trial and were found guilty of these

6     charges.  You have a right to appeal that sentence.  The

7     convictions, as well as the sentence that I've just imposed, and

8     you must do so immediately, and please confer with Ms. Manitta

9     about filing that notice of appeal.

10          MS. MANITTA:  Your Honor, we'll note his appeal for the

11     record, but I will file a notice this afternoon.

12          THE COURT:  All right.  Thank you, Ms. Manitta.

13          All right.  Mr. Amolsch, anything that you want to say on

14     behalf of Mr. Yoo at this time?

15          MR. AMOLSCH:  No, Your Honor, nothing, except for what's

16     in our pleading and what I said at the podium earlier.

17          THE COURT:  Okay.

18          MR. AMOLSCH:  I'm sorry, Your Honor, I apologize.  I do

19     ask to have a request for a specific designation, if you would

20     like to consider that now or at the end.

21          THE COURT:  Yes, I'll consider that now.  Let me -- go

22     ahead.

23          MR. AMOLSCH:  I'm sensitive to what Mr. Trump said about

24     his concerns.  I'm asking for a designation to one of two places

25     where Mr. Yoo's family is that are not on the West Coast, and I

1    don't believe there is a gang problem, as far as I know.  One is

2    USP Lee in Southwestern Virginia.  It would be five hours or so

3    from here.  And the other one would be USP Coleman, where Mr. Yoo

4    also has family.  If the Court would consider that, whatever --

5    assuming the government has no concerns about gang activity, I

6    would appreciate that.

7          THE COURT:  Okay.  And I'm not going to make the

8    designation for Mr. Le in light of the statements that the

9    government has made.  And as you-all know, the Bureau of Prisons

10   will make designations for reasons outside of what a judge

11   requests, anyway.  But I'm not going to make a request for

12   designation for Mr. Le.

13         Mr. Trump, do you want to be heard on sentencing for

14   Mr. Yoo?

15         MR. TRUMP:  No.  I think my comments apply to all three

16   defendants, and with respect to designations, again, because of

17   the gang affiliations and the fact that there are 20-plus

18   defendants, we would ask that the Court simply defer to BOP in

19   terms of any designations.

20         THE COURT:  All right.  Mr. Yoo, you have an opportunity

21   to tell me anything you would like to before I sentence you.  You

22   need to understand that anything that you do say could be used

23   against you in any future proceedings.

24         Did you want to address me at this time, sir?

25         THE DEFENDANT:  No, Your Honor.

```
1         THE COURT:  Okay.  And that's based on what we've just

2    been discussing about, your not wanting to put something on the

3    record that might be used against you in the future?

4         THE DEFENDANT:  Correct.

5         THE COURT:  Okay.  All right.  Well, I don't have anything

6    really further to say other than what I've said a few moments ago

7    with the exception that you really were the engine that put

8    Mr. Brandon White in the position of being assaulted, and then

9    being killed.  And as a result, I think that the life sentences

10   are, as harsh as they are, are appropriate sentences.

11        And so on Counts 1, 3, 4, 5, and 7, I'm going to sentence

12   you to life in the penitentiary.

13        And on Count 6, I'm going to sentence you to 20 years, to

14   run concurrent with the other sentences.

15        $600 in special assessment fees.

16        Five years of supervised release on each count to run

17   concurrently.  If you are placed on supervised release, that you

18   apply all monies that you receive to making restitution; that you

19   provide financial information to the Probation Office; that you

20   not contact any gang members; that you participate in a substance

21   abuse program as directed by the Probation Office; and that you

22   also participate in mental health treatment as directed by the

23   Probation Office.

24        I'll ask the Bureau of Prisons to make the residential

25   drug program available to you and any mental health counseling
```

1    that is available as well.  And I will request that you be

2    designated to Lee or Coleman facilities, being mindful that the

3    Bureau of Prisons will designate you as they believe appropriate

4    given the number of members of this gang and related gangs who

5    are in the Bureau of Prisons.

6        You have a right to appeal your convictions.  You went to

7    trial, and also your sentence here today, and you must notice

8    that appeal immediately.  And please speak to Mr. Amolsch about

9    that appeal following the hearing today.

10        Unless you would like to put it on the record today that

11   you'll be noticing your appeal, Mr. Amolsch.

12        MR. AMOLSCH:  Yes, sir, if I could be heard briefly on

13   that.

14        THE COURT:  Yes.

15        MR. AMOLSCH:  I will definitely note one orally, and I

16   will file his appeal.  I do think, though, that it's in Mr. Yoo's

17   best interest moving forward that he has separate appellate

18   counsel appointed.

19        I've never asked to be removed from a criminal case

20   before.  I've done many cases, and I've always done the appeal.

21   In this particular instance, though, Your Honor, given Mr. Yoo's

22   concerns about my performance, my inability to represent him, and

23   Mr. Salvato's performance, I think going forward it would just be

24   better for Mr. Yoo if he had separate appellate counsel.

25        I will note his appeal, and I will effect it, but the

1    attorney-client relationship is pretty damaged at this point.  I

2    will, of course, participate with whatever appellate counsel

3    wants me to do, but that would be my request, Your Honor.

4        THE COURT:  All right.  And put that in writing, and I

5    agree with you, and I'll find other counsel for the appeal

6    process.

7        MR. AMOLSCH:  Thank you, Your Honor.

8        THE COURT:  Thank you, Mr. Amolsch.

9        All right.  Mr. Lamborn.  And, Mr. Yamamoto, good morning

10   again.

11       MR. YAMAMOTO:  Good morning, Your Honor.  We set forth in

12   our pleadings the reasons why we believe, strongly believe, that

13   Mr. Lamborn needs mental health treatment and counseling, and

14   substance abuse treatment and counseling basically on a long-term

15   basis if he's to survive in the prison system.  So I'm hoping

16   that the Court can make a strong recommendation for both of

17   those.  Otherwise, I don't know how long he's going to survive.

18       This is nuts.  They killed a person for David Nguyen.

19   David Nguyen is doing 171 months.  These guys are going to do

20   life.  I mean, it's stupid.

21       Anyway, we would ask the Court to recommend USP Hazelton

22   or alternatively USP Coleman, either one or two.  Both are USPs.

23   He would like to go to Cumberland, but that's an FCI, and I don't

24   think the Bureau of Prisons is going to put him in an FCI.

25   That's it.

```
 1         THE COURT:  All right.  Thank you.

 2         All right.  Mr. Lamborn, you have a right to tell me

 3   anything that you would like to now before I sentence you, and

 4   you also, as you have listened for the last little while, you

 5   must understand that anything that you say to me now could be

 6   used against you in a future hearing, if it was appropriate to be

 7   used.

 8         Have you spoken to your counsel about whether you're going

 9   to speak to me this morning?

10         THE DEFENDANT:  Yeah.

11         THE COURT:  Okay.

12         THE DEFENDANT:  I was told not to say anything.

13         THE COURT:  Okay.

14         THE DEFENDANT:  I was told not to say anything.

15         THE COURT:  All right.  And you're going to listen to your

16   counsel's advice in not saying anything this morning?

17         THE DEFENDANT:  Right.

18         THE COURT:  Okay.  All right.  Again, thank you.

19         Well, as I've already said, the violence that you

20   participated in as a member of the gang and culminated, of

21   course, with the commission of Brandon White's death, you have

22   been a real leader in ratcheting up the violence of this gang,

23   and you were for many years.  You're presently a clear danger to

24   the community.

25         I hope that, as Mr. Yamamoto's just said, when you get to
```

1    the Bureau of Prisons, you seek mental health treatment, and your

2    first reaction to any confrontation is not violence, because, as

3    you are well aware now, having been in custody for this long

4    period of time, life in prison is different, and life in the

5    Bureau of Prisons is going to be different as well.  And

6    Mr. Yamamoto has every -- is very well-spoken in recommending

7    that mental health treatment, because you need to adjust the way

8    you live life in the Bureau of Prisons, or you're going to be in

9    great danger at the Bureau of Prisons as well.

10           As to Counts 1, 3, 4, 5, and 7, I'll sentence you to life

11   in prison.  Those sentences will run concurrently.

12           As to Count 6, 180 months of incarceration.

13           As to Count 13, life, consecutive to all other counts.

14           $700 in special assessment fees.

15           Five years of supervised release on each count to run

16   concurrently.

17           As special conditions, that you apply all monies received

18   to the restitution; that you don't have any contact with known

19   gang members; and that you participate in substance abuse and

20   mental health treatment as directed by the Probation Office if

21   you are allowed out on supervised release.

22           I'm going to give each of the defendants credit for time

23   served since they have been in -- since their arrests and have

24   been waiting for trial and now sentencing in this matter.

25           I'll recommend to the Bureau of Prisons that you be

1  made -- be evaluated for the residential drug abuse and treatment

2  program, also mental health treatment, vocational training, and

3  educational training.  And I'll designate you to Hazelton or

4  Coleman, but with a note that the Bureau of Prisons will

5  designate you where they think you will be safe and other members

6  of their Bureau of Prisons inmate community will be safe.

7      You have a right to appeal your conviction and the

8  sentence that I impose today.  You must notice that appeal

9  immediately.  So speak to your counsel about that.

10     All right.  Mr. Yamamoto, do you want to formally notice

11 the appeal at this time and follow up with a written notice?

12     MR. YAMAMOTO:  Yes, Your Honor.

13     THE COURT:  Do you also want a separate counsel to be

14 appointed for the appeal?

15     THE DEFENDANT:  Yeah.

16     THE COURT:  All right.  I think that, although we have not

17 agreed on whether your counsel was working in your best interest

18 during the course of the case and at trial, they were, and they

19 were -- all counsel on behalf of the -- each of the defendants

20 worked really hard to defend you to the best that each of you

21 could be defended.

22     And I commend all defense counsel for the work that they

23 did in the case.  It's been done under really difficult

24 circumstances because of COVID and limitations on in-person

25 visits that that caused, and it was especially difficult on the

```
1    three of you facing these charges.  And I understand, as I've

2    said many times, your frustration but your counsel did wonderful

3    jobs in defending you and preparing for trial, and I thank each

4    of them for having done that.

5         On behalf of the Court, my thanks to the government for

6    the work done in preparing this case.  And, again, the same

7    circumstances with COVID, an enormous amount of discovery that

8    was necessary to be organized and provided to counsel so that the

9    case could be properly tried and defended.  And I very much

10   appreciate the work that all of the teams and many other people

11   in the U.S. Attorney's Office who helped to get us where we are

12   today.

13        All right.  Anything else before we adjourn this morning?

14        MR. TRUMP:  No, Your Honor.  Thank you.

15        THE COURT:  Okay.

16        MS. MANITTA:  No.

17        THE COURT:  All right.  We're in recess.

18        (Proceedings adjourned at 11:03 a.m.)

19

20

21

22

23

24

25
```

1

2

3

**C E R T I F I C A T E**

4

I, Scott L. Wallace, RDR-CRR, certify that
the foregoing is a correct transcript from the record of

5

proceedings in the above-entitled matter.

6

/s/ Scott L. Wallace                          1/23/23

7

---------------------------          ----------------

**Scott L. Wallace, RDR, CRR              Date**

8

**Official Court Reporter**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25